UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

RICHARD W. LESLEY,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )          No. 2:15CV59 HEA
                                       )
MS. JANE DOE TEAGUE, et al.,           )
                                       )
            Defendants.                )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Stoner's Motion for Summary
Judgment [Doc. No. 86]; Defendants Hunter, Mills and Mosley's Motion for
Summary Judgment, [Doc. No. 105]; and Thompson and Osterman's Motion for
Summary Judgment, [Doc. No. 109]. Plaintiff opposes the Motions and has filed a
Motion to Deny Summary Judgment, [Doc. No. 123]. For the reasons set forth
below, the Motions for Summary Judgment are granted. Plaintiff's Motion to
Deny Summary Judgment is denied.

### Facts and Background

Plaintiff, an inmate in the Missouri Correctional System, brought this
Section 1983 action against Defendants claiming that they violated his
constitutional rights during an incident wherein Plaintiff was sprayed with pepper

spray. The following facts are taken from Defendants' statement of un-controverted facts, Plaintiff's statement of facts, and exhibits in the record.

Plaintiff was an inmate incarcerated at Moberly Correctional Center ("MCC") in Moberly, Missouri. Defendant Jeffry Ostermann was a Correctional Officer I at MCC. Defendant Nelson Thompson was a Correctional Officer III at MCC.

On December 18, 2014, Plaintiff arrived at MCC on transfer from Ozark Correctional Center. During the processing of the Plaintiff into MCC, Plaintiff became very "aggravated," "upset," and "mad." Plaintiff became very upset, aggressive, and combative with Correctional Officer Mary Teague in response to her questions regarding his property. Plaintiff yelled obscenities at multiple officers and threw food creating a disturbance and threatening the safety and security of the institution

In response to the disturbance created by the Plaintiff, Lieutenant Curtis Still and Defendant Ostermann placed Plaintiff in restraints so that he could be escorted to Housing Unit 2 of MCC, administrative segregation. Defendant Ostermann took control of Plaintiff's left arm and Lt. Still took control of Plaintiff's right arm as they began the escort. As they were leaving the gym area, Plaintiff began to resist the escort and refused to continue walking.

Officer Ostermann and Lt. Still were then forced to tighten their grips on Plaintiff's arms in order to maintain control of a potentially violent offender and to ensure the escort continued.

After Lt. Still warned the Plaintiff that pepper spray might be used if he continued to refuse orders to proceed, the Plaintiff continued to walk and no pepper spray was used at that point. During the escort, the Plaintiff orally threatened physical violence to Defendant Ostermann by stating "Ostermann, you mother f*****, I will kick you in the nuts you mother f*****. I get these f****** cuffs off, I'm kicking you in the mother f****** nuts."

Due to the Plaintiff's violent outbursts, multiple instances of noncompliance by the Plaintiff, and Plaintiff's threats of physical violence towards Defendant Ostermann, the Officers maintained control over the non-compliant offender by keeping a tight grip on his arms.

Once the escort reached Housing Unit 2, Defendant Thompson then took over the escort from Defendant Ostermann, and Defendant Ostermann had no further involvement with the Plaintiff and did not witness anything further.

Defendant Thompson and the fellow officers were informed of the Plaintiff's violent and threatening behavior. Defendant Thompson and Lt. Still then completed the escort by placing the Plaintiff in cell 2D-554. Plaintiff did not request any medical assistance during the escort.

No medical injuries to Plaintiff's hands, wrists, arms, or shoulders were noted in Plaintiff's medical records and Plaintiff did not file any medical services requests for any injuries to such areas.

Plaintiff did not file an IRR, grievance or grievance appeal concerning his excessive use of force claim against Defendant Ostermann.

It is standard policy at MCC for any offender who is placed in a cell in administrative segregation to undergo a strip search to ensure the offender is not concealing any item that is considered contraband that might pose a risk to the safety or security of the inmates, correctional officers or any other individuals at MCC. Plaintiff had been in administrative segregation prior to December 18, 2014 and was familiar with the process requiring him to undergo a strip search after placement in administrative segregation.  Plaintiff Lesley understood that in order to perform a strip search, an inmate must remove all of his clothing.

Once inside the cell, pursuant to policy that is applied to every offender who is placed in administrative segregation, Plaintiff was given direct orders to submit to a strip search and remove all of his clothing.

Plaintiff began to comply with orders to remove his clothing so that the strip search could take place, but then became argumentative and refused to continue. Defendant Thompson then repeatedly warned Plaintiff that if he continued to

refuse orders to remove his clothing so that the strip search could be completed, he would be pepper sprayed in order to obtain compliance.

Prior to any application of pepper spray, Defendant Thompson obtained oral approval from Nurse Audrey Ford at MCC that pepper spray was authorized for use on Plaintiff.

After the Plaintiff continued to refuse repeated orders to remove his clothing, a burst of pepper spray was applied to his facial area.

After allowing the pepper spray to take effect, Defendant Thompson again ordered the Plaintiff to remove the rest of his clothing so that the strip search could be completed. Plaintiff again began to comply with the orders and removed more of his clothing, but then again refused to completely remove the remainder of his clothing. Plaintiff was again warned that he would be pepper sprayed if he continued to refuse to submit to a full strip search; and, after he did refuse, another burst of pepper spray was applied to his facial area by Defendant Thompson.

After the second burst of pepper spray was allowed to take effect, Plaintiff removed the remainder of his clothing and allowed the full strip search to be conducted. Immediately upon the conclusion of the strip search, Plaintiff was examined and treated by medical staff.

The outer sides of Plaintiff Lesley's eyes were washed by a medical nurse, but Plaintiff was otherwise non-compliant during the medical assessment and refused any other treatment.

Plaintiff had access to a sink with running water in his cell.

Two days later on December 20, 2014, Plaintiff was moved to a new cell.

Offenders housed in administrative segregation are offered showers on a set schedule unless medical staff notifies custody staff that a medical need exists for an offender to take a shower outside of the normal schedule. Medical staff did not provide any order for the Plaintiff to be given a shower outside of the normal schedule set for offenders in administrative segregation.

Plaintiff was offered a shower on December 21, 2014, but he refused the opportunity to shower.

No burns, welts or blisters were ever observed on Plaintiff. Defendant Stoner assessed Plaintiff at approximately 2:00 PM on December 18, 2014 after pepper agent had been applied by custody staff. During the December 18, 2014 appointment, Plaintiff complained of burning eyes, but denied any difficulty breathing or other injuries. During the December 18, 2014 appointment, Plaintiff refused to open his eyes so that Defendant Stoner could perform further inspection of his complaints. She was able to wash the outer side of Plaintiff's eyes with eye wash, but he refused any other treatment or assessment at that time. Plaintiff

admits that his eyes were rinsed by Defendant Stoner. Plaintiff was non-compliant during the December 18, 2014 encounter. Defendant Stoner noted that Plaintiff should flush his eyes with water or saline, and consider a shower with soap and cool water if the exposure area was large; though, Plaintiff did not make any request for a shower during the encounter, nor did he make any statements or requests regarding cleaning his cell.

Defendant Stoner determined that Plaintiff was not in acute distress during the December 18, 2014 encounter. Defendant Stoner instructed Plaintiff to notify medical immediately if he developed any symptoms or shortness of breath. Defendant Stoner does not recall Plaintiff ever asking her for treatment for burns, welts or blisters, including any cream or ointment. She never observed any burns, welts or blisters on Plaintiff's body. She does not recall Plaintiff requesting a shower or to have his cell cleaned following the use of pepper agent, or any other time.

The scheduling of showers in segregation and the cleaning of cells is not handled by medical staff as these are custody issues. Defendant Stoner never observed any need for Plaintiff's cell to be cleaned or that he required a shower. She never observed Plaintiff's cell to be soaked with pepper agent.

Plaintiff saw another nurse at his cell on the evening of December 18, 2014 at which time he complained about his placement in a strip cell and requested a

medical service request and a shower. The nurse explained to Plaintiff that those were not options at that particular moment, but he could discuss his requests with mental health staff that would be seeing him the following day. In the meantime, Plaintiff continued to be monitored.

Plaintiff was seen by mental health staff, twice, early on the morning of December 19, 2014, during which he made no medical complaints or requests, other than complaining that he was hot.

Defendant Stoner is not a mental health nurse and never provided any mental health care to Plaintiff.

Plaintiff had a chronic care appointment with his treating physician on December 29, 2014, and made no complaints regarding pepper agent injuries.

Besides the December 18, 2014 encounter, Defendant Stoner's only other appointments with Plaintiff were on December 23, 24 and 31, 2014, and January 14, 2015. None involved issues regarding the pepper agent application. During the December 23, 2014 encounter, Plaintiff requested to see mental health for stress and anxiety, and Defendant Stoner forwarded his request to mental health staff. On December 24, 2014, Defendant Stoner saw Plaintiff for complaints that his pain medication for chronic rib and back pain was not working. Plaintiff was referred to an upcoming scheduled appointment with a provider. On December 31, 2014, Defendant Stoner saw Plaintiff for left toe pain due to an ingrown toenail and

referred him to a medical provider for further evaluation. Defendant Stoner saw Plaintiff on January 14, 2015 for complaints of left elbow pain during which he requested an x-ray. She advised Plaintiff that she would speak with the physician about obtaining an x-ray of his left elbow as requested. Plaintiff was transferred to another facility a short time later.

Defendant Stoner did not deny Plaintiff medical treatment for any medical concerns or symptoms. She did not deny Plaintiff access to a physician.

On the evening of December 18, 2014, Plaintiff saw Defendant Hunter at approximately 8:00 PM. This was her only encounter or appointment with Plaintiff.  At the time of the December 18, 2014 evening appointment, Plaintiff was in segregation and on suicide watch. Defendant Hunter did not place Plaintiff on suicide watch. When Defendant Hunter saw Plaintiff on the evening of December 18, 2014, she was doing rounds passing out medication, including medication for Plaintiff, which he took as directed.  When Defendant Hunter saw Plaintiff, he complained about his placement in the strip/suicide cell and indicated he desired a shower and a medical service request form. Defendant Hunter attempted to explain to Plaintiff that those were not options at that particular moment since he was actively on suicide watch, but further explained that he would be seen by mental health staff the following day and could discuss how to proceed with them at that time.

When an inmate is on suicide watch, showering is an activity typically warranted only when the patient has either (1) been on suicide watch for multiple days and the mental health and custody staff have discussed the case and patient and have deemed it appropriate to move the patient to the shower area, or (2) the patient medically requires a shower for reasons such as soiling themselves or having an excessive amount of pepper spray on their person. Neither of these circumstances was present when Defendant Hunter saw Plaintiff, which was approximately six hours after his contact with pepper spray.

When an inmate is on suicide watch, safety is a very high priority and no unapproved items are permitted in a suicide cell. The patient is typically provided a quilted gown and a similar blanket. No other materials, including paper and pen/pencil, are provided as they could pose a safety risk to the patient under suicide watch, including self-harm and blocking the camera present in the cell.

If an inmate on suicide watch is observed to be in medical distress or otherwise in need of medical attention, care is provided. Defendant Hunter did not observe Plaintiff to be in need of medical care.

During Defendant Hunter's December 18, 2014 encounter with Plaintiff, he became upset and started cursing, and the encounter ended. She noted that Plaintiff would continue to be monitored per protocol, which would include close monitoring by custody staff and regular checks by nursing staff.

From a medical standpoint, a nurse will check in with the suicide watch patient each shift to observe how the patient is doing, to speak about any issues they may be having, and to address any of the patient's concerns to the best of the nurse's ability at that time. Any ordered medications are given during medication pass times. If there is an issue reported to medical staff per custody, such as attempts of self-harm or if the patient declares a medical emergency, a nurse will go see the patient. Aside from the well-being checks that occur around the clock, the patient's status is monitored and changed only by mental health staff. Defendant Hunter is not a mental health nurse and did not provide mental health care to Plaintiff.

Depending on the time of day that a patient begins placement on suicide watch, they will be seen by mental health staff that day or as soon as possible the next day for evaluation and a plan of action regarding removal or continuance of their suicide watch status as deemed necessary by the qualified mental health staff members.

Defendant Hunter did not observe Plaintiff to be in any acute distress or to have any emergent need for medical intervention during her encounter with him on the evening of December 18, 2014.She did not observe Plaintiff's cell to be soaked with pepper agent. If she had observed his cell to be covered in pepper agent causing him medical distress, she would have coordinated with custody staff to

have him moved to another cell or the shower area. She did not observe any burns, welts or blisters on Plaintiff's body. If she had, she would have made this notation in the medical chart and would have sought appropriate treatment. Defendant Hunter did not observe any need for Plaintiff's cell to be cleaned or that he medically required a shower, cell move, or other medical intervention when she saw him. If she had observed the need for such, she would have notified custody staff and would have coordinated the means necessary to transfer him to another appropriate cell or shower area. If Plaintiff had presented with the need for medical intervention, Defendant Hunter would have contacted a medical services provider immediately for further treatment plans.

Plaintiff saw Defendant Mills at approximately 5:00 AM on the December 19, 2014. When she saw Plaintiff on December 19, 2014, Plaintiff was in segregation and on suicide watch. She did not place him on suicide watch. When Defendant Mills saw Plaintiff on the early morning of December 19, 2014, he complained that he was hot, but did not make any other complaint at that time. He made no medical complaints during the encounter. She noted that he would continue to be monitored per protocol. She did not observe Plaintiff to be in any acute distress or to have any emergent need for medical intervention during her encounter with him on the morning of December 19, 2014. Defendant Mills never observed any burns, welts or blisters on Plaintiff's body, nor did he make any such

complaints to her. If Plaintiff had made complaints to Defendant Mills regarding the application of pepper spray, she would have noted his complaints in his medical record, and would have rendered any necessary care for the same. When Defendant Mills saw Plaintiff on the morning of December 19, 2014, it was during her routine check of inmates on suicide watch as inmates on suicide watch are to be seen by a nurse on each shift. When she saw Plaintiff on the morning of December 19, 2014, she had worked the overnight shift. If Plaintiff had self-declared a medical emergency overnight, she would have seen him at that time; however, Plaintiff's records reflect that he made no such complaints. Defendant Mills also never observed any need for Plaintiff's cell to be cleaned or that he required a shower; he also never requested these items from her. She did not observe his cell to be soaked with pepper agent.

Defendant Mills did not have any other encounters or appointments with Plaintiff.

Plaintiff's subsequent medical records reveal no complaints relating to the application of pepper agent, including no complaints of pepper agent injuries raised during a chronic care appointment with his treating physician on December 29, 2014.

The scheduling of showers in segregation and the cleaning of cells is not handled by medical staff; these are custody issues.

Defendant Mosley, who is the charge nurse, never had any encounters or appointments with Plaintiff. She did chart Plaintiff's transfer and receiving paperwork into his medical chart upon arrival to Moberly Correctional Facility, but she never saw him for an alleged pepper spray incident or any other issue.

For purposes of transfer/receiving, a nurse would have seen Plaintiff to complete and obtain signatures for various forms. The nurse then returns the paperwork to Defendant Mosley, as the charge nurse, and she inputs the information into the system. When an inmate is placed in segregation, there is a variety of paperwork they must complete, some of which is related to medical care. Some of those forms have Defendant Mosley's name on them because she is the charge nurse; however, she does not actually see the inmates in segregation for completion of the paperwork.

Defendant Mosley never observed any burns, welts or blisters on Plaintiff's body, nor does she recall him ever requesting treatment for burns, welts or blisters, a shower, or to have his cell cleaned. She never saw Plaintiff at all.

No Defendant observed any burns, welts or blisters on Plaintiff's person.

Plaintiff has seen an optometrist on multiple occasions during his incarceration. Plaintiff's optometry treatment has not revealed any long-term eye injury attributable to the application of pepper spray. Plaintiff has been treated for dry eyes, mild cataracts and retinal and corneal scarring—none of which was

caused by the brief application of pepper spray. For dry eyes, Plaintiff is routinely prescribed artificial tears. For cataracts and retinal and corneal scarring (which has been attributed to an accident in the 1990's), Plaintiff has been provided eyeglasses and assessed by multiple specialists. Though Plaintiff did not qualify for cataracts surgery, he was provided other surgery (laser peripheral iridotomy) to improve his condition with regard to the scarring. Plaintiff's scarring is stable. None of this treatment is related to the application of pepper spray.

## Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.,* 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir.2000) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir.2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir.1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir.2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir.2000). However, the court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 210 (8th Cir.1976).

Local Rule 7-4.01(E) provides with respect to summary judgment motions:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 7-4.01(E). Plaintiff has not met the requirements of Local Rule 4.01(E), and is deemed to have admitted all facts in Defendants' Statement of Uncontroverted Facts. *Turner v. Shinseki,* 2010 WL 2555114, at *2 (E.D.Mo. June 22, 2010) (citing *Deichmann v. Boeing Co.,* 36 F.Supp.2d 1166, 1168 (E.D. Mo.1999), aff'd, 232 F.3d 907 (8th Cir.2000), cert. denied, 531 U.S. 877).

However, Plaintiff's failure to respond properly to the motion for summary judgment does not mean summary judgment should be automatically granted in favor of Defendants. Even if the facts as alleged by Defendants are not in dispute, those facts still must establish Defendants are entitled to judgment as a matter of law. *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.,* 332 S.W.3d 184, 191 (Mo.Ct.App.2010) (citations omitted). *See also Burnett v. Acikgoz,* No. 4:13–CV–1990–JAR, 2015 WL 4603475, at *2 (E.D.Mo. July 30, 2015); *Vandergrift v. Emerson,* 2012 WL 15021, at *1 (W.D.Mo. Jan. 4, 2012).

**Defendant Ostermann**

Defendant asserts that Plaintiff failed to comply with Missouri Department of Corrections policy and seeks summary judgment under Federal Rules of Procedure 56.

An inmate may bring an action in court against a correctional facility or its officers only after exhausting his or her administrative remedies. This requirement is mandated by the Prison Litigation Reform Act ("PLRA"), which states, "No action shall be brought . . . by a prisoner confined in any jail . . . until such administrative remedies are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust the administrative remedies of the correctional facility before filing suit in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). If exhaustion was not completed at the time of filing, dismissal is mandatory. *Id.*

### Missouri Department of Corrections Offender Grievance Procedure

The Missouri Department of Corrections requires that all Missouri inmates follow the same grievance procedure irrespective of the prison. The procedures are set out in the department manual "D5-3.2 Offender Grievances." There is a three-step process inmates are required to adhere to before their remedies are considered "exhausted." For clarity, relevant portions are set forth below:

> **Informal Resolution Request Process, § III. K(1)**
> "Any offender who wishes to file an informal resolution request, on a grievable issue, must do so within 15 calendar days from the date of the alleged incident."

**Offender Grievance Process, § III. L(1)**
"After completing the informal resolution request process, if the offender is not satisfied, she/he may obtain an Offender Grievance form from designated staff."

**Offender Grievance Process, § III. L(4)**
"A grievance must be filed within 7 calendar days after the offender receives the response on the Informal Resolution Request Form. Failure to do so will result in the complaint being abandoned."

**Appeal, § III. M(1)**
"If the offender wishes to appeal a grievance, the offender must submit the original Offender Grievance Appeal form to the grievance officer within 7 calendar days. Failure to do so will result in the appeal being considered abandoned."

**Appeal, § III. M(12)**
"After receiving the appeal response, the offender has exhausted the grievance process."

The Plaintiff has provided the Court with no evidence supporting his claim that he exhausted his remedies as to Defendant Ostermann by following the administrative procedures afforded to him by the Missouri Department of Corrections. Indeed, the only IRR, Grievance and Grievance appeal regarding Plaintiff's claims are with respect to Defendant Thompson for the use of the pepper spray. There are no grievance documents regarding Plaintiff's claim of excessive force during Plaintiff's escort to administrative segregation.

**Defendant Thompson**

Plaintiff claims the use of pepper spray was a violation of his Eighth Amendment right to be free from cruel and unusual punishment. "The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." *Johnson v. Blaukat,* 453 F.3d 1108, 1112 (8th Cir.2006) (citing *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). "Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Id.* (quotation omitted). "The test for reasonableness or good faith application of force depends on 'whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.' " *Id.* (quoting *Treats v. Morgan,* 308 F.3d 868, 872 (8th Cir.2002)).

Whether an application of pepper spray violates the Eighth Amendment requires a fact-specific inquiry as to the extent of pain inflicted upon the inmate. *Lawrence v. Bowersox,* 297 F.3d 727, 731 (8th Cir.2002); *Jones v. Shields,* 207 F.3d 491, 495 (8th Cir.2000). The use of pepper spray must be "reasonable under the circumstances," but it must not be "punitive, arbitrary, or malicious." *Treats v. Morgan,* 308 F.3d 868, 873 (8th Cir.2002).

Plaintiff was ordered to remove his clothing for the required administrative segregation strip search, per policy. Plaintiff refused and received multiple warnings and opportunities to comply. Plaintiff refused. He received short bursts of pepper spray, and received immediate medical attention following the incident. "'The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Jones,* 207 F.3d at 495 (quoting *Hudson,* 503 U.S. at 9–10). Viewing the evidence in Plaintiff's favor, the Court finds that, under the circumstances presented, Defendant's administration of pepper spray was not "repugnant to the conscience of mankind." The Eighth Circuit has recognized that applications of force are constitutionally permissible "when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy" *Jones*, 207 F.3d at 496 (citing *Hickey v. Reeder,* 12 F.3d 754, 759 (8th Cir.1993), *Soto v. Dickey,* 744 F.2d 1260 (7th Cir.1984)). The record before the Court indicates that Defendant utilized mace to enforce a jail order upon a noncompliant inmate, and not for any sadistic purpose. The record also does not indicate that Plaintiff was refused any medical treatment or otherwise forced to suffer after being sprayed. The Court finds that the use of the pepper spray was a "good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Jones,* 207 F.3d at

497.  Plaintiff has failed to establish an Eighth Amendment violation with regard to being pepper sprayed.

In order to present a claim for unconstitutional conditions of confinement, "[a]n inmate must make two showings—one objective and one subjective—to successfully state an Eighth Amendment claim." *Ambrose v. Young*, 474 F.3d 1070, 1075 (8th Cir 2016).  Plaintiff must show the alleged violation is "objectively [and] sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation and quotation marks omitted).

> An alleged violation is "objectively [and] sufficiently serious" when the inmate "is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citation and quotation marks omitted); *accord Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010). We have found this first requirement satisfied in various contexts. *See, e.g.*, *Nelson*, 603 F.3d at 447 (holding an inmate faced a substantial risk of serious harm when officials assigned him to share a room with an inmate known to have sexually assaulted other inmates); *Irving v. Dormire*, 519 F.3d 441, 445, 448–49 (8th Cir. 2008) (finding a sufficient risk of harm when a correctional officer made verbal death threats to an inmate); *Simmons v. Cook*, 154 F.3d 805, 807–08 (8th Cir. 1998) (finding a sufficient risk of harm when officials placed two paraplegic inmates in solitary confinement for thirty- *643 two hours without access to food and medical care).

*Kulkay v. Roy*, 847 F.3d 637, 642–43 (8th Cir. 2017).

The inmate must show the defendant official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

> In a case challenging the conditions of confinement, the requisite state of mind is "'deliberate indifference' to inmate health or safety." *Farmer*, 511

U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson*, 501 U.S. at 302–03, 111 S.Ct. 2321). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). This requirement "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson*, 501 U.S. at 297, 111 S.Ct. 2321).

This court has repeatedly held mere negligence or inadvertence does not rise to the level of deliberate indifference. *See, e.g.*, *Schaub v. VonWald*, 638 F.3d 905, 914–15 (8th Cir. 2011) ("Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." (quoting *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970)); *Stephens v. Johnson*, 83 F.3d 198, 200–01 (8th Cir. 1996); *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

In contrast to negligence, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993)…The defendant-official's state of mind "must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.' " *Schaub*, 638 F.3d at 915 (quoting *Lenz v. Wade*, 490 F.3d 991, 993 n.1 (8th Cir. 2007)).

*Kulkay* 847 F.3d 637at 643.

Plaintiff makes no allegations that he and Defendant Thompson had any interactions after Plaintiff was pepper sprayed. Plaintiff has presented no evidence which would implicate Thompson regarding the existence of any constitutionally deficient conditions of confinement, *i.e.* Plaintiff has failed to establish the deliberate disregard of any substantial risk of harm element, even if the Court were

to assume the cell's conditions to be deficient.  Defendant Thompson is entitled to judgment as a matter of law.

**Defendant Stoner**

Defendant Stoner is a nurse at Moberly Correctional Center.  The only time Defendant Stoner saw Plaintiff with regard to the pepper spray was on December 18, 2014, very shortly after Plaintiff received the bursts of spray.  On December 18, 2014, Defendant Stoner briefly rinsed the outer part of Plaintiff's eyes, but could not rinse the inside because Plaintiff refused to open his eyes.  She instructed Plaintiff to consider a shower with cool water and soap, if Plaintiff's exposure area was large, and that he should notify medical immediately if Plaintiff had shortness of breath or difficulty breathing.  Defendant Stoner did not notice any welts, burns or blisters on Plaintiff's body.  Plaintiff did not request a shower, indeed, he refused a shower when he was offered a shower under Administrative Segregation schedule.  Furthermore, placement is particular cells are the responsibility of the custody division of the Correctional Center, not medical.  Plaintiff has submitted no evidence to controvert the medical records or Defendant Stoner's affidavit that she provided prompt medical attention to Plaintiff following the pepper spray incident.  Plaintiff's speculation and belief as to what Defendant Stoner should have done does not satisfy his burden of producing evidence to establish that

Defendant Stoner knew of and conscientiously disregarded a serious medical need. Defendant Stoner is entitled to judgment as a matter of law.

**Defendant Mosley**

Defendant Mosley is the charge nurse who charted Plaintiff's transfer and receiving paperwork into his medical chart upon arrival at Moberly Correctional Center. She never saw Plaintiff at any time. Plaintiff has produced no evidence that Defendant Mosley had any physical contact with him. Therefore, under the applicable law, Defendant Mosley is entitled to judgment as a matter of law; she had no knowledge of any serious medical need, nor did she conscientiously disregard any serious medical need Plaintiff had. *Jolly,* 205 F.3d at 1096

**Defendant Hunter**

Defendant Hunter's only encounter with Plaintiff was at approximately 8:00 p.m. on December 18, 2014. At that time, she gave Plaintiff his medication, which Plaintiff took. She observed no burns, welts or blisters on Plaintiff's body. She explained to him that, under suicide watch policy, he was not able to shower, but explained further that he would be seen by mental health staff the following day, and they could discuss how to proceed at that time. Plaintiff did not appear in any distress at the time Defendant Hunter saw him. She did not observe his cell to be soaked with pepper agent. Had Defendant Hunter observed any of these conditions, she would have notated them in Plaintiff's medical chart and would

have requested treatment. Plaintiff has presented no evidence that Defendant knew of, and deliberately disregarded a serious medical need. Defendant Hunter is therefore entitled to judgment as a matter of law.

**Defendant Mills**

Defendant Mills saw Plaintiff early on December 19, 2014. Plaintiff complained that he was hot, but made no other complaints. She observed no burns, welts or blisters on plaintiff's body, and Plaintiff made no complaints of any of these conditions. Defendant Mills saw Plaintiff during her routine check of inmates on suicide watch. She never saw the need to clean Plaintiff's cell. He did not request a shower at the time she saw Plaintiff. Plaintiff has presented no evidence that Defendant knew of, and deliberately disregarded a serious medical need. Defendant Mills is therefore entitled to judgment as a matter of law.

## Conclusion

Simply put, there are no facts in the record before this Court to suggest that Plaintiff's claims are supported. The minimal use of pepper spray was required to maintain order and safety. No defendant ever observed any burns, welts or blisters. Plaintiff received medical attention immediately following the application of the pepper spray and he was monitored closely thereafter. His cell was never saturated with pepper spray. Clearly, all of the defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment [Doc. No.'s 86, 105 and 109] are granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Deny All Summary Judgment motions, [Doc. No. 154] is denied.

A separate Judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 10th day of March, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE